UNITED STATES *v.* BAKER PERKINS, INC., R. F. DOWNING CO., INC. (No. 4958)[1]

United States Court of Customs and Patent Appeals, July 7, 1959

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section, for the United States.

*Barnes, Richardson & Colburn, E. Thomas Honey (Joseph Schwartz* of counsel), for appellee.

Before WORLEY, Acting Chief Judge, and RICH, and MARTIN, Associate Judges.

RICH, Judge, delivered the opinion of the court:

This appeal by the United States is from the judgment of the United States Customs Court, Second Division, (C.D. 1961) one judge dissenting, sustaining the protests of appellees, Baker Perkins, Inc. and R. F. Downing & Co., Inc., and holding that the imported

---

[1] C. A. D. 714.

merchandise, described as "Cocoa Liquor Grinding Mill" and 2 sets of "Finishing Discs" is properly classified under paragraph 353 of the Tariff Act of 1930, as modified by G.A.T.T., 82 Treas. Dec. 305, T.D. 51802, as articles having as an essential feature an electrical element or device, rather than under paragraph 372, Tariff Act of 1930, as machines, n.s.p.f., as classified by the collector. Two protests were consolidated for trial.

The record indicates that the mill is used to grind cocoa nibs, which are the meat of the cocoa bean, a step in the manufacture of chocolate. The machine occupies a floor space of about 4½ by 6 feet and is about 9 feet high. A V-belt drive connects the mill to a prime mover, not part of the importation, through the usual pulleys. In this case the importers intended to use a 40 housepower electric motor for motive power.

In the operation of the mill the nibs are carried by a conveyor to a hopper located at the top of the mill. There is an electro-magnet associated with the hopper for the purpose of extracting from the feed any foreign metal particles which can be attracted by a magnetic field. The nibs are first preground by the machine on roughing disks and then fine ground on a set of finishing discs which further reduces them in size. As a result of friction heat produced, the nibs become a chocolate liquor which is conveyed to liquor storage tanks. At the trial it was stipulated that the imported merchandise is in chief value of metal.

The collector classified the machine and parts under paragraph 372 of the Tariff Act of 1930 which, so far as pertinent is:

\* \* \* all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem: Provided, That parts, not specially provided for, wholly or in chief value of metal or porcelain, of any of the foregoing, shall be dutiable at the same rate of duty as the articles of which they are parts: \* \* \*.

Paragraph 372 was modified by G.A.T.T., 82 Treas. Dec. 305, T.D. 51802, which lowered the rates of duty on merchandise classified thereunder with the following exception:

Other (except wrapping and packaging machines: *food grinding or cutting machines;* machines for determining the strength of materials or articles in tension, compression, torsion, or shear; machines for making paper pulp or paper; *machines for manufacturing chocolate* or confectionery; and internal-combustion engines) ____ 15% ad val. (Emphasis ours.)

Thus, the imported merchandise was found dutiable by the collector under paragraph 372 at the original rate of 27½ per centum ad valorem.

The importers' protests, which were sustained by the Customs Court, are that the machine and parts are properly classified under paragraph 353, Tariff Act of 1930, which as modified by G.A.T.T., supra, is:

Articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy, and *articles having as an essential feature an electrical element or device*, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs; all the foregoing (not including electrical wiring apparatus, instruments, and devices), finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\* \* \*

Other articles (except machines for determining the strength of materials or articles in tension, compression, torsion, or shear; flashlights; batteries; vacuum cleaners; and internal-combustion engines) _____ 15% ad val.
  *Parts*, finished or unfinished, wholly or in chief value
of metal, not specially provided for, of articles provided
for in any item 353 of this Part_____ The same rate of duty
(Emphasis ours.) as the articles of which
they are parts.

It is not disputed that the cocoa grinding mills are "machines" within paragraph 372 and would go in that paragraph if not more specifically provided for elsewhere and the sole issue before us is whether they, together with their parts, can properly be classified under paragraph 353.

The Customs Court, sustaining appellees' protests, found that an electric motor is "the only practicable means of energizing the machine" and that the "principle of decision enunciated in" *United States.* v. *Dryden Rubber Co.*, 22 CCPA 51, T.D. 47050, therefore applies. That case (in which Garrett, J. dissented with an opinion) dealt with a machine for cutting sponge rubber cake. The evidence therein indicated that two electric motors accompanied the machine, which was a kind of band saw, upon importation and that bolt holes were provided in the machine for the attachment of the motors. The opinion also said, "no other method of applying power is provided or arranged for." In the instant case, however, the machine was imported without a prime mover of any kind and appellees' sole witness admitted that it could be powered by means other than an electric motor, such as a steam engine, a diesel engine or gasoline motor. What appears to have strongly influenced the court below was the testimony to the effect that from a *practical, commercial* standpoint, "electricity is the only motive power that can be employed for the operation of this mill," as it said in its opinion.[2] The fact that other

---

[2] In this connection the following colloquy at the end of the trial is of interest:

Judge LAWRENCE: Based on your knowledge and experience with this machine and having in mind the nature and character of the work performed in your plant, are there any substitute means of locomotion other than electricity, from a commercial standpoint?

WITNESS: No.

Judge LAWRENCE: So it follows that the electric motor is an essential constituent part of this particular machine?

WITNESS: In my opinion, yes, sir, and I might add in the opinion of the people who purchased the machine also—our engineering department in Milwaukee.

Judge LAWRENCE: I see.

Mr. HONEY: Plaintiff rests, and submits.

power sources would not be practical in appellees' operation cannot be controlling here because ██ it is well settled that the classification of an imported article must rest upon its condition as imported, and that condition in this case did not limit the drive to an electric motor.

██ The mere contemplation of the use of electric motive power is not sufficient to constitute the machine an article having as an essential feature an electrical element under paragraph 353.

If we were to be governed (or motivated) by appellees' argument that the controlling fact, which we do not question, is "that electrical motive power is the only practical commercial motivating force," some strange results would follow. In this day and age the water wheel and steam engine have passed from the commercial scene insofar as the operation of factory machine tools is concerned. One need not look far to discover that almost every machine in a factory is operated by an electric motor as a practical commercial matter. If this fact is to be taken into consideration in construing paragraph 353 then the humblest wood-turning lathe and every other device having a pulley or sprocket on it for the attachment of a drive belt or a chain is going to become an "article having as an essential feature an electrical element or device" because, practically, it is going to be operated by electrical motive power if it is operated at all.

Judge Garrett, dissenting in the *Dryden* case, pointed out (22 CCPA at 57) that even the majority opinion therein "does not here go so far as to hold that all motor-operated devices do fall within the paragraph [353] for that reason." We cannot agree with the conclusion below that the electric motor by which appellees' mill is driven makes it essentially an electrical article. It was a grinding mill having a drive shaft to which a pulley was attached. Any source of adequate power connected to that pulley to rotate the shaft would run the machine. Except for practical and commercial considerations, in the operation of a chocolate factory in a given location, the power source would be immaterial. Selection of an electric motor did not make the grinding mill an essentially electrical article. The following from the *Dryden* case is pertinent:

From what has been said, it follows that if the article, when it is imported, is designed and constructed to use electrical power, or other power, interchangeably, then it has not, as an essential feature, an electrical element or device.

Appellees contend further that in addition to the drive, the electromagnetic separator in the hopper is an essential electrical feature which places the machine within paragraph 353. The record indicates that the function of the electro-magnet is restricted to extracting metal particles which happen to be among the cocoa nibs which are fed into the machine. (The fact seems to have been ignored, but it would of course remove only metal attracted by a magnet.) Appellees reason that this exacting operation is essential because it pre-

vents contamination of the product and possible damage to the machine which would be caused by the introduction of the particles. There is no direct connection between the function of the electromagnet and the mill *per se*, the former merely constituting an auxiliary although a desirable step in the reduction of cocoa nibs to chocolate liquor. The particles of metal could easily be separated from the nibs at some point far removed from the imported machine. We feel that the function of the electro-magnet in this milieu is too remote from the principal function of the cocoa mill to term the device an "essential" feature of the machine under paragraph 353. In the absence of tramp iron in the feed, the mill would function equally as well without the magnet and we regard it as we would regard an electric clock or light affixed to the machine for convenience, not as an "essential feature."

Appellees have failed to overcome the presumption of correctness attaching to the collector's classification. The judgment of the Customs Court is *reversed*.